# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1366V**
UNPUBLISHED

|  |  |
|---|---|
| DONNA KNASEL, | Chief Special Master Corcoran |
| Petitioner, | Filed: February 14, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Traci R. Patton, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On October 13, 2020, Donna Knasel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza vaccine on November 8, 2019. Petition at 1, ¶¶ 1, 11. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although a ruling on entitlement in Petitioner's favor was issued in January 2022, the parties have been unable to resolve damages on their own.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$114,460.33**, **representing $112,500.00 for actual pain and suffering, plus $1,960.33 for past unreimbursed expenses.**

## I.      Procedural History

Approximately one month after filing her petition, Ms. Knasel filed the medical records and the signed declaration[3] required under the Vaccine Act. Exhibits 1-8, filed Oct. 22, 2020, ECF No. 6; *see* Section 11(c). On October 29, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 8.

While awaiting Respondent's tentative position, Petitioner filed updated medical records. Exhibit 9-10, Oct. 4, 2021, ECF No. 16. On January 28, 2022, Respondent filed his Rule 4(c) Report conceding Petitioner was entitled to compensation, and I issued a Ruling on Entitlement the same day. ECF Nos. 21-22. For almost five months thereafter, the parties attempted to informally resolve the issue of damages. *See,* e.g., Status Report, filed Mar. 16, 2022, ECF No. 25. On May 19, 2022, they informed me they had reached an impasse in their discussions. ECF No. 28.

During the subsequent four-month period, Petitioner filed a supplemental signed declaration[4] and expenses documentation, and the parties offered their damages briefs. Petitioner's Brief on Damages ("Brief"), filed Aug. 8, 2022, ECF No. 31; Exhibits 11-12, filed Aug. 9, 2022, ECF No. 33; Respondent's Brief on Damages ("Opp."), filed Aug. 9, 2022, ECF No. 35. In early September 2022, they each filed reply briefs. Petitioner's Responsive Brief on Damages ("Pet. Reply"), filed Sept. 5, 2022, ECF No. 37; Respondent's Responsive Brief on Damages ("Res. Reply"), filed Sept. 6, 2022, ECF No. 38. The matter is now ripe for adjudication.

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such

---

[3] Rather than an affidavit, the statement provided by Petitioner is a declaration signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

[4] Petitioner's supplemental declaration also is signed under penalty of perjury as required by 28 U.S.C.A. § 1746.

expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves*

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

### III.    Prior SIRVA Compensation Within SPU[6]

#### A.    Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2023, 3,031 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,950 of these cases, with the remaining 81 cases dismissed.

Of the compensated cases, 1,677 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 148 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[7]

1,501 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of

---

[6] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[7] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 1,273 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[8] Agreement |
|---|---|---|---|---|
| **Total Cases** | *148* | *1,501* | *28* | *1,273* |
| **Lowest** | $40,757.91 | $22,500.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,382.97 | $65,000.00 | $90,000.00 | $40,000.00 |
| **Median** | **$93,649.92** | **$85,000.00** | **$122,886.42** | **$56,250.00** |
| **3rd Quartile** | $125,000.00 | $112,654.00 | $161,001.79 | $82,500.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

## B.   Pain and Suffering Awards in Reasoned Decisions

In the 148 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $90,000.00 as the median amount. Only seven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually

---

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In six cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## IV.    Appropriate Compensation

### A.    The Parties' Arguments

Petitioner is seeking $130,000.00 for her actual/past pain and suffering, and $1,960.33 for unreimbursed expenses. Pet. Brief at 15; Pet. Reply at 1, 7. Respondent counters that the lesser sum of $105,000.00 is appropriate. Res. Brief at 1, 13; Res. Reply at 1, 3. Regarding the expenses Petitioner seeks, Respondent maintains that he "does not have sufficient information at this time to recommend an appropriate award." Res. Brief at 1.

When arguing for the greater pain and suffering award she seeks, Petitioner compares the facts and circumstances in her case favorably with the experiences of the petitioners in *Nute* and *Rafferty,* who received $125,000.00 and $127,500.00, respectively.[10] Pet. Brief at 14. She also cites five additional cases involving arthroscopic surgery in which the petitioners were awarded $125,000.00 for their pain and suffering,

---

[10] *Nute v. Sec'y of Health & Hum. Servs.,* No.18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 9, 2019); *Rafferty v. Sec'y of Health & Hum. Servs.,* No.17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020).

but does not discuss the specific facts of those cases.[11] Pet. Brief at 15. Emphasizing the symptoms she reported in 2022, and which she maintains she still experiences, Petitioner proposes that her pain and suffering award should be slightly higher than in these cited decisions. *Id.*

Characterizing Petitioner's pain (especially initially) as mild, and her post-surgical recovery as excellent, Respondent argues that the *Shelton, Martin,* and *Weed* cases (involving pain and suffering awards ranging from $97,500.00 to $105,000.00) are better comparable cases.[12] Res. Brief at 7-12. And "while the instant case involved an arthroscopic surgery and multiple steroid injections, [P]etitioner suffered, at best, a mild to moderate SIRVA." *Id.* at 12. In her reply, Petitioner disputes Respondent's characterization of her SIRVA Injury as anything but severe. Pet. Reply at 1-3. She also criticizes the comparable cases offered by Respondent, reiterating the rationale for the comparisons she made. *Id.* at 4-6.

Regarding the unreimbursed expenses she seeks, Petitioner maintains that all needed documentation has been provided, and that her requested expenses qualify as "unreimbursable" even if the incurred costs were initially satisfied by funds she held in a Health Savings Account ("HSA"). Pet. Reply at 6-7. Respondent's reply solely addressed the unreimbursed expenses issue. Res. Reply at 1-3. He clarified that he does not consider any expenses satisfied by funds contained in Petitioner's HSA, which is partially employer-funded, to constitute *incurred unreimbursable* expenses under the Vaccine Act. *Id.* at 2.

## B.    Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

---

[11] *Wallace v. Sec'y of Health & Hum. Servs.,* No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); *Dobbins v. Sec'y of Health & Hum. Servs.,* No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018); *Roberson v. Sec'y of Health & Hum. Servs.,* No. 19-0090V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Stokes v. Sec'y of Health & Hum. Servs.,* No. 19-0752V, 2021 WL 6550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021); *Drake v. Sec'y of Health & Hum. Servs.,* No. 18-17476V, 2020 WL 4674105 (Fed. Cl. Spec. Mstr. July 7, 2020).

[12] *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021); *Martin v. Sec'y of Health & Hum. Servs.,* No. 19-0830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021); *Weed v. Sec'y of Health & Hum. Servs.,* No. 18-1473V, 2021 WL 1711800 (Fed. Cl. Spec. Mstr. Mar. 30, 2021).

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Knasel suffered a moderate SIRVA injury for approximately seven months – until undergoing arthroscopic surgery in early June 2020. Prior to her surgery, she received two cortisone injections followed by seven and four PT sessions, respectively. Exhibit 4 at 7-8 (December 5, 2019 injection), 13-14 (February 25, 2020 injection); Exhibit 3 (PT records). After her arthroscopic surgery – involving a rotator cuff repair, subacromial decompression, and extensive bursectomy (Exhibit 6 at 9-10), Petitioner showed significant improvement during four months of post-surgical PT (Exhibit 10).

Throughout her injury, Petitioner reported mild to moderate pain levels. When first seen by an orthopedist, Petitioner estimate that her pain was at a level of five out of ten. Exhibit 4 at 5. During her first round of PT in December 2019 through early January 2020, Petitioner reported pain levels from three to four, with one mention of a present pain level of two. Exhibit 3 at 11, 15, 19, 23, 27, 31. She experienced a wider range of pain during her March 2020 PT – from zero to six, but usually reported a lower level – two, for her present pain. *Id.* at 35, 38, 41, 44. Following surgery, Petitioner's pain levels quickly improved from one to three (exhibit 10 at 1, 5, 9, 13) to a consistent estimate of zero to two within three weeks. (*id.* at 17, 21, 25, 33, 37, 41, 45, 49, 53, 57).

By her discharge from post-surgical PT – on August 31, 2020, Petitioner indicated "her shoulder [wa]s feeling great." Exhibit 10 at 57. Described as making great progress and meeting most of her goals, she was instructed to continue a home exercise program. *Id.* at 58-59. When seen for a follow-up orthopedic appointment on October 8, 2020 – approximately eleven months post-vaccination, Petitioner reported only "an occasional twinge in her left shoulder, but no pain." Exhibit 9 at 1. Noted as having full ROM with no pain, Petitioner was instructed to follow-up as needed. *Id.* at 2-3.

Petitioner did not return to the orthopedist until sixteen months later – on February 17, 2022. At this visit – approximately three weeks after I issued my ruling finding Petitioner entitled to compensation, she reported pain "every so often" and an inability to reach behind her. Exhibit 11 at 1. It was noted that Petitioner "did have a subacromial spur that was removed during surgery," and a cortisone injection was administered. *Id.* at 2-3. When Petitioner returned on March 17, 2022, she "state[d] that the subacromial injection given 4 weeks ago has completely alleviated her left shoulder pain." *Id.* at 5-6.

Given that these later visits occurred after a significant gap in treatment, were concurrent with this vaccine proceeding, and involved extremely mild symptoms, they do not provide sufficient evidence of a longer duration of SIRVA injury. Instead, I find the overall duration of Petitioner's injury to be approximately ten to eleven months. Her SIRVA injury was substantially resolved by her discharge from post-surgical PT and last orthopedic appointment in 2020. And her course involved surgery, even if *otherwise* it was moderate in overall character.

The *Nute* and *Rafferty* cases cited by Petitioner involved SIRVA injuries with a similar duration. *Nute*, 2019 WL 6125008, at *12; *Rafferty*, 2020 WL 3495956, at *2-7. However, the petitioners in those cases suffered more severe pain levels than experienced by Petitioner. *Nute*, 2019 WL 6125008, at *1-6, 12; *Rafferty*, 2020 WL 3495956, at *2-7. Thus, Petitioner's past pain and suffering award should be *lower*, not higher, than the awards in those cases. At the same time, Respondent's comparables are also somewhat inapt. The petitioner in *Weed,* for example, suffered moderate pain levels for only two months before undergoing arthroscopic surgery. *Weed,* 2021 WL 1711800, at *4. And although the *Shelton* petitioner reported similar pain levels as Ms. Knasel, the *Shelton* petitioner did not seek treatment for her SIRVA injury until five months post-vaccination – a fact which supports the proposition that her initial SIRVA injury was less painful. *Shelton*, 2021 WL 2550093, at *7. The pain levels experienced by the *Martin* petitioner were consistently mild. *Martin,* 2021 WL 2350004, at *3.

I find that an entirely different comparable case, *Issertell*,[13] offers the best comparison to the facts and circumstances in this case. Like Petitioner, the *Issertell* petitioner suffered seven months of mild to moderate pain, followed by a similar arthroscopic surgery, and good resolution of her symptoms within one year. *Issertell*, 2022 WL 2288247, at *2-6. I find Petitioner should receive the same amount of compensation for her pain and suffering as awarded in *Issertell* - $112,500.00.

## C.    Unreimbursed Expenses

Under the Vaccine Act, petitioners may seek compensation for past and future unreimbursable expenses resulting from their vaccine-related injury. Section 15(a)(1). However, payment will not be made for any item or service if the payment has been made, or can reasonably be expected to be made, under any State compensation program, any insurance policy, or any Federal or State health benefits program (other than Title XIX of the Social Security Act – Medicaid payments) or "by an entity which provides health services on a prepaid basis." Section 15(g). Additionally, no health insurance policy,

---

[13] *Issertell v. Sec'y of Health & Hum. Servs.,* No. 20-0099V, 2022 WL 2288247 (Fed. Cl. Spec. Mstr. May 17, 2022).

State, or provider of prepaid health benefits may make payments of benefits secondary to Program compensation. Section 15(h). Medicaid payments are specifically exempted from this provision. *Id.*

Respondent argues that any medical expenses Petitioner paid using HSA funds would not qualify as *incurred unreimbursable* expenses. Res. Reply at 2.  Although he does not address the issue directly, Respondent appears to assume that Petitioner's HSA account qualifies as a Federal health benefits program. However, he fails to cite any authority to support this assertion.

Respondent's argument is unpersuasive. Money held in an HSA account may be used to pay any medical expense the account holder incurred that year. Unlike a medical insurance plan, the funds are not designated for, or dependent upon, the specific treatment received. Rather, they are a source of funds Petitioner may use, if she chooses, to pay a medical expense she has incurred and for which she is legally responsible. Thus, while they are (in accordance with the HSA's specific requirements, which can vary) *designated* for health care-related expenses, they are otherwise like any funds a petitioner might hold and apply to medical costs. Respondent would have no argument that money held by a petitioner in his checking account and used to pay a vaccine injury-related health care bill could not be reimbursed via Program award – the present circumstances are no different.[14]

The costs in question have been shown to be related to Petitioner's care for her injury, and could not be reimbursed from some other payor. I thus find Petitioner is entitled to the full amount of past expenses sought - $1,960.33.

---

[14] Respondent also observes that a portion of the HSA funds were contributed by Petitioner's employer, but that does not affect my determination. The costs at issue do not become "reimbursable" simply because some of the funds used to pay them were effectively an indirect employment benefit, but rather the HSA funds at issue comingle with funds contributed by Petitioner herself. And but for this injury, those funds might well have been applied to other health treatment; I have observed in other decisions that Petitioners have a right to reimbursement of foregone benefits like lost vacation days/sick days, when some had to be applied to vaccine injury costs. *See, e.g., Gross v. Sec'y of Health & Hum. Servs.,* No. 19-0835V, 2021 WL 2666685, at *6 (Fed. Cl. Spec. Mstr. Mar. 11, 2021), *review denied,* 154 Fed. Cl. 109 (2021).

  Otherwise, I deem Respondent's effort to distinguish HSA funds Petitioner personally contributed to those her employer did to unreasonably complicate the exercise of awarding her costs clearly associated with her injury. Respondent's position would necessitate a full yearly accounting of every expense paid using HSA funds and apportionment of the exact source of those funds – whether originating from employee or employer. Given the option, a petitioner would no doubt argue that he paid *every* vaccine-related expense with monies he contributed, rather than those originating from his employer. I do not believe Congress intended this type of specific, post-payment inquiry into the source of funds used to pay properly incurred medical expenses.

## V.      Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $112,500.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[15] I also find that Petitioner is entitled to $1,960.33 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award a lump sum payment of $114,460.33 in form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.